[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows: CT Page 12052
The defendant and the plaintiff, whose maiden name was Lewis, intermarried at East Lyme, Connecticut on August 10, 1974; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are two minor children issue of the marriage, William Pindell born September 12, 1982 and Jennifer Pindell, born December 15, 1985; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation and that neither party is currently receiving assistance from the State of Connecticut.
Plaintiff testified that during the marriage defendant was selfish; that he came first in the marriage; that he failed to communicate with the plaintiff while he was traveling on his employer's business; that defendant had a drinking problem which subsequently decreased; that when he retired, they agreed that he would take two years off from employment but that he would care for the children which he didn't do; that the marriage was solid until the end of 1997 when it was no longer doing well.
The defendant testified that the plaintiff refused to undergo counseling since she felt there was no need for same; that there was a lack of communication between the parties; that plaintiff became easily aggravated; that sexual relations between the parties became poor; that plaintiff resisted his sexual advances and that when he told her about it she replied "that's the way it is."
On September 14, 1998 the defendant told plaintiff that he was fed up with her and left the marital home. In February 1999, defendant left Connecticut and moved to Bivalve, Maryland to live with and care for his elderly father. Dolores, a woman with whom defendant was employed and with whom he became sexually intimate with during September 1998 accompanied him to Maryland. Defendant admits Dolores was one of the reasons why he left the plaintiff.
It is obvious that the marriage of the parties has broken down irretrievably. I find the defendant more at fault for the breakdown than the plaintiff.
The plaintiff, who was born January 29, 1954, is in fair to good health although she undergoes monitoring because of a lump on her breast. The plaintiff had a DC because of cervical cancer and had her varicose veins removed.
The plaintiff is a high school graduate. Subsequently she took some CT Page 12053 college courses, drafting courses at the Electric Boat in Groton, Connecticut, some courses on scouting and on the duties and responsibilities of an ombudsman.
As a result of his position, the defendant had 120 men under his command. Therefore, he required the plaintiff to become an ombudsman. This required her to plan social activities for the men in his command; to write newsletters, to communicate with the Navy on behalf of the wives of the men under his command and to keep said wives happy.
At the time of her marriage to the defendant, plaintiff was employed at Electric Boat as a maritime operator. She was so employed for nine years when she left her employment the spring of 1981. She feels she could have made a career at Electric Boat except for that transfer.
In Virginia plaintiff was employed at Hickory Farms for three months. The parties returned to Connecticut the spring of 1983. Thereafter plaintiff began doing daycare for six years earning about $250.00 per week.
In August 1994, plaintiff became employed at Walmart because defendant had retired one year early and his retirement pension wasn't enough to live on. Plaintiff advanced to a department manager at Walmart but left there in 1995 due to problems at home. She returned to Walmart in 1996 and has been employed as a department manager since. She has a gross bi-weekly income of $900.00 and a net biweekly income of $500.00.
The defendant, who was born February 21, 1951 is in fair to good health. However, he did suffer knee injuries before his marriage and low back problems in 1991-1992 and had surgery in June 2000.
The defendant's injuries to his left leg have limited his employment. Because of injuries to his lower back, the defendant is limited to not lifting more than 25 lbs. In July 2000 defendant suffered an aneurism in his aorta and continues with vascular problems and an aneurism in his peck and groin. Presently he is on blood thinner medication.
At the time of his marriage the defendant had been in the U.S. Navy 4 years. He stayed in the Navy and retired around 1994 after serving for 24 years. During his service he rose to E-9, Master Chief. He had 120 men under his command. After his retirement in 1994, the defendant was not employed until 1997 when he returned to work at Family Dollar starting at $5.00 plus per hour which subsequently increased to $8.00 per hour in the summer of 1998.
Defendant's employment at Family Dollar required him to travel. He had CT Page 12054 a salary of $700.00 per week. As a result of his employment, the defendant was only at home three to four times a month initially. Later he came home less often. He left the marital home September 14, 1998.
The defendant's retirement provides him with $2,100.00 per month. Although his financial affidavit dated September 6, 2000 shows he is employed at Roaring Point Waterfront Campground with a net weekly income from such employment of $249.00, at trial he indicated he lives off his retirement only.
The parties purchased the marital residence located at 146 Bloomingdale Road, Waterford, Connecticut for around $85,000.00. Proceeds from previously owned homes by the parties were used to purchase the present home.
According to their financial affidavits both parties value the marital home at $190,000.00. It is subject to a mortgage of about $90,000.00.
In addition the plaintiff owns a 1986 Chevrolet Truck valued at $1,000.00 and a Navy Federal Credit Union account of $26.00.
The defendant owns a 1991 Voyager valued at $2,000.00; a 1997 Ford Expo with an equity of $1,325.00; a Hebron Savings Bank account of $243.00; a Navy Federal Credit Union account of $9.00 and an unidentified car valued at $300.00.
The parties jointly own home furnishings which the defendant values at $20,000.00. The plaintiff claims she has no knowledge of its value. The parties also jointly own a stamp collection, which the parties agreed to divide as set forth in the orders herein after set forth.
After considering all the provisions of Connecticut General Statutes (C.G.S.) §§ 46b-61, 62, 66a, 81, 82 and 84 and the evidence, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is ordered that:
1. The parties shall have joint legal custody of their minor child with primary physical custody to the plaintiff. The defendant shall have reasonable rights of visitation and as may be requested by their daughter.
2. The defendant shall pay to the plaintiff $165.00 per week as child support.
3. The defendant shall pay to the plaintiff $1.00 per week alimony for ten years, plaintiffs remarriage or death of either party, whichever is CT Page 12055 the first to occur. Said alimony shall be modifiable as to amount but not as to term. In the event of plaintiffs cohabitation pursuant to C.G.S. § 46b-86 (b), said alimony may be modified in accordance with said statute.
4. Both parties shall provide medical insurance for the benefit of such child and shall divide equally any unreimbursed medical and dental expenses.
5. The plaintiff shall take her son William as an exemption on her income tax for the year 2000. The defendant shall take his daughter Jennifer as an exemption on his income tax for the year 2000. Thereafter, the parties shall alternate taking their minor daughter Jennifer as an exemption on their income tax returns with the plaintiff getting the odd-numbered years and the defendant the even-numbered years.
6. The defendant shall transfer all of his interest in the marital home located at 146 Bloomingdale Road, Waterford, Connecticut to the plaintiff. She shall hold him harmless on the mortgage and she shall pay all expenses of ownership. The plaintiff shall issue to the defendant a promissory note in the amount of $25,000.00 at 6% interest secured by a mortgage on the property, said note to be paid within two years.
7. Each party shall be responsible for their respective debts as are listed on their financial affidavits.
8. The defendant shall keep three stamp collections; to wit, United Nations, United States Singles and the United States Plate Blocks. The remaining stamp collections shall belong to the plaintiff.
9. The plaintiff shall keep all other personal property in the home except for a roll-top desk, photos and personal property and effects of defendant which he shall keep.
10. The parties shall divide equally the Connecticut Income Tax refunds for the years 1998 and 1999 and the escrow repayment from the refinancing of the jointly owned premises, all now held by defendant's attorney.
11. Each party shall keep the motor vehicles presently in their possession. The defendant shall hold the plaintiff harmless on any loans on his vehicles.
12. Each party shall keep the bank accounts and credit union accounts listed on their respective financial affidavits and divide equally any such accounts held jointly. CT Page 12056
13. Each party shall keep the life insurance policies on their lives free of any claim from the other. The life insurance policies on their minor child shall be turned over to the child when the child attains the age of 18.
14. The custodial account for the benefit of their son William shall stay the same and is to be used only for the educational expenses of their children.
15. The defendant shall transfer to the plaintiff by a Qualified Domestic Relations Order 40% of his accrued present benefits in his Navy Pension. No survivorship benefits are awarded to the plaintiff as she had previously waived them. Any tax liability resulting from this order shall be the responsibility of the plaintiff.
The court shall retain jurisdiction over this matter until such order has been properly executed and accepted by the proper authorities.
16. Each party shall pay their own attorney's fees
JTR Vasington